ESTATE OF LORENA F. NUTTER, DECEASED, DENTEN L. NUTTER, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Nutter v. Comm'r
Docket No. 20525-80. United States Tax Court
T.C. Memo 1982-530; 1982 Tax Ct. Memo LEXIS 218; 44 T.C.M. (CCH) 1127; T.C.M. (RIA) 82530; September 15, 1982. James R. Ganz, for the petitioner. J. Anthony Hoefer, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal estate tax in the amunt of $68,954.33. The sole issue is the fair market value at the date of decedent's death of four parcels of real estate. FINDINGS OF FACT Lorena F. Nutter (hereinafter decedent) died on December 4, 1976. Denten L. Nutter, decedent's son and the executor of her estate, resided at Shelton, Nebraska, at the time the petition in this case was filed. The estate tax return was timely filed with the Internal Revenue Service Center at Ogden, Utah. Decedent's estate included four parcels of real estate *219 that she had previously held as joint tenants with right of survivorship with her husband, Lyman C. Nutter. Mr. Nutter died testate on August 28, 1975, and left all of his property to his wife. The estate tax return for Mr. Nutter's estate was filed on or about January 29, 1976, and the four parcels of real estate were listed in the return at a value of $306,800. No appraisal report was attached to that return, and there is no evidence in the record as to the method of valuation used or the factors considered in arriving at that figure. After deduction of expenses, a marital deduction of one-half of the adjusted gross estate, the $60,000 exemption, and a credit for state death taxes, the estate tax reported as due for the estate of Lyman C. Nutter was $17,679.12 and that amount was paid by the estate. Respondent accepted the return as filed and issued an estate tax closing letter on August 17, 1976. No improvements or changes to the four parcels of real estate were made in the period between Lyman C. Nutter's death in 1975 and decedent's death in 1976. However, real estate values were appreciating rapidly in that area of Nebraska in the period of 1975 and 1976. Real estate *220 prices levelled off or declined slightly in 1977, and 1978 prices were roughly comparable to the 1976 prices. The four parcels of land (hereinafter referred to as tracts #1 through #4) were situated in Buffalo County, Nebraska, near Gibbon, Nebraska. Tract #1, referred to as the river property, was basically about 76,801 acres, some 14 acres of which was accretion land. This parcel included dryland river pasture land and hay meadow land. Tract #2 was about two acres of land on which was located an old school house that had been converted into a single-family residence. Tract #3 was a quarter section of land--about 160 acres, containing a two-acre shelter belt off to one side and containing three wells that irrigated separate portions of the tract, about 80, 40 and 40 acres of the property, respectively. Tract #4 was the so-called "short 80" (79.375 acres) and contained two wells, some 50 acres of gravity irrigated cropland, a building site, a creek, and some pasture land. The property contained a house and outbuildings. These four tracts of land were inherited from decedent by Denten Nutter and his two brothers, and at the time of the trial of this case the three brothers *221 were engaged in farming the land. Denten Nutter and his brothers did not testify as to their opinion of the value of their land. Denten Nutter testified that in preparing the estate tax return for his mother's estate, he accepted the appraisal of one N.L. Rusmisell "as being a fair appraisal of the properties." He further stated at the trial that he still accepted that appraisal, but he did not discuss the appraisal or give any reasons for his acceptance thereof. [1]
The Rusmisell *222 "appraisal" is a one-page letter that briefly describes the location of each of the four parcels of land and lists a dollar figure for each tract, which the letter describes as "a fair and reasonable value of each parcel." The letter does not explain how Mr. Rusmisell arrived at the figures. N.L. Rusmisell did not appear at the trial, and there is no evidence in the record as to the method of valuation used or the factors considered by him. There is no evidence in the record as to Mr. Rusmissell's qualifications as a real estate appraiser. Respondent called as his expert witness, Larry D. Jones, a qualified real estate appraiser and farm manager from Aurora, Nebraska. Mr. Jones was engaged in buying and selling real estate, particularly farm properties, as a real estate agent or broker and had been so engaged for 16 to 17 years. About 30 to 40 percent of Mr. Jones' time was devoted to appraising property. He was a licensed real estate appraiser and a licensed real estate broker in the State of Nebraska. His appraisal work was performed in the southern half of Nebraska including the area where the subject properties (tracts #1 through #4) were located. Mr. Jones had attended *223 special seminars on real estate appraisal work, was a member of various professional societies, and had previously been qualified as and testified as an expert witness on real estate appraisals. Mr. Jones was also engaged in farming his own land and managing various other farms on behalf of the owners thereof. The Court concluded that Mr. Jones was an expert on real estate appraisals, particularly appraisals of farm real estate. [2]
The values of each parcel of land, as reported on the estate tax return of each spouse and as determined by respondent's expert witness, Larry D. Jones, were as follows: Estate Tax Return
Estate Tax Return
Jones'
Parcel of Land
of Lyman Nutter
of Lorena Nutter
Appraisal
Tract #1
$ 32,500
$ 22,750
$ 34,560
Tract #2
8,000
5,700
16,500
Tract #3
200,000
189,450
320,000
Tract #4
66,300
53,300
119,062
Total:
$306,800
$271,200
$490,122
*224 Mr. Jones used the market data or comparative sales approach in valuing the subject properties as of December 4, 1976, the date of decedent's death. Generally, buyers and sellers of farm real estate in that area of Buffalo County, Nebraska, rely on the market data approach. Mr. Jones personally inspected the subject properties but without viewing the inside of the houses. He checked local courthouse records for all sales of properties in a three to four mile area around the subject properties, and based his valuations on what he determined to be the sales of the most comparable properties in that area at the pertinent time. Because real estate prices in the area increased sharply in 1975 and 1976, levelled out and declined somewhat in 1977, and were in 1978 at about the same level as in 1976, Mr. Jones relied upon sales occurring in the years 1976, 1977, and 1978. [3] Mr. Jones inspected all of the properties considered in his report but again did not view the inside of any of the houses. These properties were identified in his report as "Index Sale # 1" through "Index Sale # 18." Not all of these index sales were comparable to the subject properties, but Mr. Jones exercised *225 his best professional judgment in selecting the most comparable sales for valuing each of the four parcels in issue and made appropriate adjustments to the sales figures to reflect any significant differences between the particular index sale and the particular subject property being valued and any differences as to time before or after the pertinent valuation date. [4]
*226 In evaluating the various index sales and the subject properties, Mr. Jones considered the following information and date: (1) land classifications assigned to the land by the county assessor's office; (2) the number of acres shown on the records of the county assessor; (3) the appraisal values used by the county assessor; (4) soils maps of Buffalo County; (5) soils capabilities of the index sales properties and of the subject properties, based on soils surveys prepared by the Soils Conservation Service of the Department of Agriculture; and (6) sales prices from the courthouse records. Mr. Jones further verified those sales prices by checking with local banks, the Federal Land Bank, and local real estate people, and by relying upon his own professional background and knowledge. [5] The Court concludes that Mr. Jones' appraisal of tracts #1 through #4 was reasonable and that the fair market value of those four tracts of land at the date of decedent's death was $490,000, as determined (and rounded off) by Mr. Jones. *227 OPINION Since decedent's gross estate includes the value of her property at date of death (section 2031(a)), the only issue in this case is the fair market value of the four parcels of land on December 4, 1976, the date of her death. Fair market value is the price at which the property would change hands, after negotiation, between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts. Sec. 20.2031-1(b), Estate Tax Regs.; Portland Manufacturing Co. v. Commissioner,56 T.C. 58, 79-80 (1971). [6] Fair market value is a question of fact and petitioner has the burden of proof on the issue. Rule 142(a), Tax Court Rules of Practice and Procedure; In re Williams Estate,256 F. 2d 217, 218, 220 (9th Cir. 1958), affg. a Memorandum Opinion of this Court. Petitioner has failed to carry that burden of proof. Petitioner argues on brief that the "fee appraisals obtained by the *228 taxpayers are entitled to equal dignity [with Mr. Jones' appraisal]" and that "the appraisals used by the taxpayer more nearly represent 'fair market value' than do the appraisals by the IRS Appraiser [Mr. Jones]." However, petitioner did not present any appraisals or any appraiser. Petitioner introduced into evidence (1) the estate tax return for decedent, (2) the estate tax return for her husband, Lyman C. Nutter, who died some 15 months before decedent's death, (3) certain miscellaneous papers relating to the probate of the will of Lyman C. Nutter, (4) an old 1924 soils map, and (5) the testimony of Denten Nutter, decedent's son and the executor of her estate, who testified that in preparing the estate tax return for his mother's estate he relied on and accepted the "appraisal" of one N.L. Rusmisell. Mr. Nutter further testified that he still "accepted" the Rusmisell cappraisal." The Rusmisell "appraisal" was a one-page letter giving a description of each parcel of land and a dollar figure characterized in the letter as "a fair and reasonable value of each parcel." Mr. Rusmisell did not appear or testify at the trial. The record contains no evidence as to his qualifications *229 as a real estate appraiser and no evidence as to what method of valuation, if any, that he used or what facts or information he considered in arriving at those four figures. Nor did Denten Nutter's testimony cast any light on why he relied on or accepted that "appraisal." Under these circumstances, the Court can accord no probative weight to the Rusmisell "appraisal." There is no competent, probative evidence in the record to support the figures reported in the estate tax return for Lorena F. Nutter. At the trial petitioner appeared to be relying upon the tax returns as proof of the facts and figures contained therein, and the Court cautioned petitioner against such unwarranted reliance. It is well established that a tax return does not establish the facts contained therein but merely constitutes a statement of the taxpayer's claim. Roberts v. Commissioner,62 T.C. 834, 837 (1974); Seaboard Commercial Corp. v. Commissioner,28 T.C. 1034, 1051 (1957). [7] And a taxpayer's naked testimony that the tax return as filed was correct does not establish that *230 to be the fact. Halle v. Commissioner,7 T.C. 245 (1946), affd. 175 F. 2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950). Petitioner nonetheless attempts to rely upon the estate tax return for Lyman C. Nutter as proof of the figures stated therein. As indicated above, a tax return does not establish such figures. The fact that the executor signs it under penalties of perjury is the same as any other taxpayer who signs his return under the normal jurat that appears on every tax return. In any event, there was no appraisal report attached to that return. [8] Moreover, if petitioner is perhaps suggesting something in the nature of an estoppel argument, then it should be noted that petitioner himself did not rely on the figures in the earlier return: *231 Estate Tax Return of
Estate Tax Return of
Lyman C. Nutter (Date
Lorena F. Nutter (Date
of Death 8-28-75)
of Death 12-4-76)
Tract 1
$ 32,500
$ 22,750
Tract 2
8,000
5,700
Tract 3
200,000
189,450
Tract 4
66,300
53,300
Total
$306,800
$271,200
Although prices were escalating sharply in that area of Nebraska in the 1975 to 1976 period, petitioner reported lower values for these same parcels of land on the later return than he had reported on the estate tax return for his father who died some 15 months earlier. Petitioner seems to suggest that, since respondent issued an estate tax closing letter and did not challenge the figures in the return for the estate of Lyman C. Nutter, those figures somehow become "prima facie evidence." We do not agree. Respondent is not bound by any tax return, much less the tax return for another taxpayer for another year. The valuation issue has been raised in regard to the return for the estate of Lorena F. Nutter and must be decided by this Court on the basis of competent and probative evidence. Lastly, petitioner argues in his reply brief that he himself is "better than anyone else qualified to testify *232 as to values of the subject premises and accuracy of appraisals, as he has lived on said premises for his entire lifetime, and has farmed a portion thereof for the past five years, and during all the periods in question." [9]The opinion of a landowner as to the value of his property is admissible in evidence without further qualification, because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land,534 F. 2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F. 2d 87, 92 (10th Cir. 1946); Harmon v. Commissioner,13 T.C. 373 (1949). But we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable or offered solely to serve the self-interests of the taxpayer. Fixel v. Commissioner,T.C. Memo. 1974-197, affd. without opinion 511 F. 2d 1400 (5th Cir. 1975). [10] We are certainly not bound to accept uncritically and without any factual basis a landowner's bald *233 assertion of a value figure. [11]
*234 We conclude that petitioner has not carried his burden of proof in this case. His attacks on respondent's appraisal report do not serve to establish the correctness of the figures listed in the estate tax return. Moreover, the Court concludes that Mr. Jones' appraisal was reasonable and that his figures represent the fair market value of the four parcels of land on the date of decedent's death. Respondent's determination will be sustained. Decision will be entered for respondent.
Footnotes
1. This "appraisal" was received in evidence on the limited basis that Denten Nutter relied upon it in prearing the estate tax return and may have attached it to the estate tax return as filed. The record is less than clear in this regard. On cross-examination, Denten Nutter first testified "I know nothing of the letter, sir." Thereafter, it was never clearly established that the letter ("appraisal") was in fact attached to the estate tax return as filed. However, Denten Nutter satisfied the Court that he had in fact relied upon the Rusmisell "appraisal" in preparing the estate tax return and the document was received in evidence for the limited purpose of showing what the executor relied upon.↩
2. Petitioner does not appear to challenge Mr. Jones' qualifications as an expert, except for referring to him as "the IRS hired appraiser" and to his appraisal as "the fee appraisal obtained at the behest of the Internal Revenue Service." Expert witnesses are not expected to render their services on a probono↩ basis, and "The labourer is worthy of his hire." Luke, X, 5.
3. Petitioner complains that Mr. Jones used no sales from the 1975 period and used sales from the period after decedent's death (1977 and 1978). Petitioner describes this as "a definite and pronounced bias in favor of later sales." However, petitioner simply ignores the evidence in regard to the pattern of prices in the period from 1975 through 1978. The Court has found as a fact that prices in 1978 were comparable to those in 1976. Mr. Jones properly used prices from the 1976-1978 period, and because of the sharply escalating prices in 1975 and 1976, he properly disregarded the 1975 prices. ↩
4. Petitioner also complains about some of the index sales thus used. Although no parcel of land is exactly like another parcel, the Court is satisfied that Mr. Jones carefully selected the most comparable sales, and made appropriate adjustments to such sales. Petitioner did not present any expert witness and did not furnish any other appraisal for the Court's consideration. The Rusmisell "appraisal" was not an appraisal but merely four unsubstantiated figures. Even if there were weaknesses in Mr. Jones' report, and petitioner's arguments on brief do not persuade the Court that there were, that would not furnish a basis for sustaining the four wholly unsupported figures in the Rusmisell "appraisal."↩
5. On brief petitioner argues that these sales prices are undependable because they are mostly "contract sales" which, he says, would be at prices higher than cash sales. There are no facts in the record to support such arguments. The Court will not speculate on whether traditional financing methods or "creative financing" methods were used, or on what effect, if any, this might have on proper valuation methods. In any event, in an armslength transaction between a willing buyer and a willing seller, each having full knowledge of all relevant facts and neither being under any compulsion to buy or to sell, the terms of any financing arrangement or the lack of any need to finance would be part of the sales price finally agreed upon. However, normal market forces and the competing and adverse interests of the buyer and seller should ensure that the price they agree upon is the "fair market value." The Court is aware of the problems of "creative financing" and arguments that such financing devices are skewing sales prices so that the true value of the property is less than the sales price. That problem confronts state and local taxing authorities in assessing real estate for local tax purposes. This Court will not wander into that morass with the inadequate factual record of this case and will cling to the basic definition of "fair market value" as the only solid ground in what would otherwise be a valuation guagmire.↩
6. See also Estate of Iacono v. Commissioner,T.C. Memo. 1980-520↩.
7. See also Watkins v. Commissioner,T.C. Memo. 1978-403↩.
8. Petitioner's reply brief suggests there was an appraisal report as part of that return, but the Court's exhibit (Petr. Ex. 1) does not contain any appraisal report, just a listing by the executor. Had there been such an appraisal report, it would be hearsay and would not help petitioner in the absence of testimony by the appraiser himself.↩
9. This argument in the reply brief goes on to talk about "petitioner's appraisals." The Court is unaware of any appraisals made by Denten Nutter at any time, and concludes that the reference is to the listing of property in the estate tax returns Mr. Nutter prepared for both his father's estate and his mother's estate. If there were any appraisals prepared by Mr. Nutter, the Court was not favored with any information about them. ↩
10. See also Baker v. Commissioner,T.C. Memo. 1978-378; Jones v. Commissioner,T.C. Memo. 1978-329↩, Fn. 4. 11. Mr. Denten Nutter simply answered "Yes, sir" to his counsel's questions as to whether, when he prepared his mother's estate tax return, he accepted the Rusmisell appraisal "as being a fair appraisal of the properties that were listed in [his] inventory sheet" and as to whether he still accepted it as a fair appraisal. The Court has already discussed the so-called Rusmisell "appraisal." Mr. Nutter's monosyllabic answers add nothing to the four unsubstantiated figures that constitute the Rusmisell "appraisal." We are not required to accept uncritically Mr. Nutter's wholly unexplained acceptance of those wholly unexplained figures.↩